### UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISCTRICT OF TEXAS
### Waco Division

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                   :

JTH TAX LLC d/b/a LIBERTY TAX SERVICE, :
   1716 Corporate Landing Parkway     :
   Virginia Beach, Virginia 23454       :
                   :

SIEMPRETAX+ LLC,            :
   1716 Corporate Landing Parkway     :  Case No: 6:20-cv-140
   Virginia Beach, Virginia 23454       :
                   :  **VERIFIED COMPLAINT**
              Plaintiffs,   :
    v.                 :
                   :

MICKEY WHITE,             :
    Serve:  212 County Road, 206A    :
        Cameron, TX 76520       :
                   :

And                 :
                   :

NATTY'S TAX SERVICE,        :
    Serve: 1400 W Adams Street    :
      Temple, TX 76504        :
                   :
            Defendants.   :
                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PLAINTIFF'S VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs JTH Tax LLC d/b/a Liberty Tax Service ("Liberty") and SiempreTax+, LLC ("SiempreTax+") (collectively, the "Plaintiffs"), by counsel, allege for their Verified Complaint against Defendants Mickey White ("White"), and Natty's Tax Service ("Natty's"), (collectively "Defendants"), and states as follows:

### INTRODUCTION

1.    Defendants intentionally and deceptively conceived a plan to purchase another franchise territory, use a Mutual Termination Agreement, negotiate approximately $24,000 in debt

forgiveness, $8,000 in reduced franchise fees and operating capital in the form of rental payment assistance from Liberty, only to abandon one of the franchise locations and continue tax preparation services using Liberty's Marks and goodwill to solicit customers into the Franchise Location office located at 1400 West Adams, Temple, Texas 76504 and to perform the tax preparation services through Natty Tax Service so as to divert all revenue away from Plaintiffs and into Defendants' pockets.   This is a civil action brought by Liberty and SiempreTax+ for preliminary and permanent injunctive relief and damages for infringement of federally registered trademarks, violations of federal unfair competition, breach of contract, breach of promissory notes, and tortious interference.

2.      White created Natty's Tax Service as a vehicle to hide revenue from which royalties are owed by White as a former franchisee to Liberty pursuant to the TX044 Franchise Agreement dated September 26, 2016 and the TX468 Franchise Agreement dated January 14, 2019 (the "Franchise Agreements").  Natty's is a business enterprise whose operations are designed to solicit customers under Liberty's Marks, trade secrets, and good will.  At least one Franchise Location known as 15546 at 1400 W Adams Street, Temple Texas 76504 appears to be operating as a Liberty franchise or former Liberty franchise, advertising under Liberty's Marks and soliciting customers with a partially painted over sign and Liberty indicia inside.  However, White has not transmitted a single return through Liberty's software during the 2019 tax season.  Instead, he is violating the Franchise Agreements, and Mutual Termination Agreement dated March 1, 2019 by breaching their in-term and post-termination non-competition covenants, potentially disclosing Liberty's confidential information, and failing to pay royalties.  Defendants in concert are violating federal and state trademark and unfair competition laws through their deception to the public about the origin of the tax preparation services, specifically by luring customers into the office(s) under

the guise that they will receive tax preparation services from Liberty, but then filing the returns through Natty's Tax Service.

3.      Plaintiffs seek an immediate injunction (1) enjoining White from breaching his non-competition covenants, (2) enjoining Defendants from using any of Liberty's Marks or any confusingly similar name, device, mark, service mark, trademark, trade name, slogan, or symbol to obtain revenue for Natty's or any other individual or company that is not the Franchised Business, (3) enjoining White from using any of Plaintiffs' confidential information, (4) enjoining Defendants from diverting or attempting to divert any customer or business from Liberty or to solicit or endeavor to obtain the business of any person who shall have been a customer of the Franchise Location for a period of two years, (5) enjoining Defendants from using non-Liberty software to prepare and electronically file tax returns from the Franchised Business's computers; and (6) enjoining Natty's from tortiously interfering with the TX044 and TX468 Franchise Agreements and the Mutual Termination Agreement.

## PARTIES

4.      Plaintiff JTH Tax LLC d/b/a Liberty Tax Service ("Liberty") is a Delaware limited liability company with its principal place of business at 1716 Corporate Landing Parkway, Virginia Beach, Virginia 23454.  Liberty and its affiliates maintain franchises and company-owned income tax preparation offices throughout the United States, including the State of Texas.

5.      Plaintiff SiempreTax+, LLC ("SiempreTax+") is a Virginia limited liability company with a principal place of business at 1716 Corporate Landing Parkway, Virginia Beach, VA 23454.

6.      Defendant Mickey White ("White") is a citizen of the State of Texas with a last known residential address of 212 County Road, 206A, Cameron, Texas 76520 and a business address of 1400 West Adams Street, Temple, Texas 76504.

7.      Defendant Natty's Tax Service ("Natty's") is a business enterprise with its principal place of business at 1400 West Adams Street, Temple, Texas 76504.  White is identified as a tax preparer for Natty's.

## JURISDICTION AND VENUE

8.      This Court has personal jurisdiction over each of the Defendants because White is a natural person who is a citizen of the State of Texas and Natty's is a business enterprise operating in the State of Texas.

9.      This Court has original subject matter jurisdiction over this claim pursuant to the Lanham Act, 15 U.S.C. § 1051, *et seq*.  This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims under the Lanham Act.

10.      White entered into valid and enforceable franchise agreements for the ownership and/or operation of three Liberty franchise locations (attached hereto as **Exhibits A** (TX044), **B** (TX466), **C** (TX468)), a contemporaneous SiempreTax+ LLC franchise location (attached hereto as **Exhibit D** (TX466)) (collectively, the "Franchise Agreements"), and a mutual termination agreement to terminate the ownership of one of the Liberty franchise locations (TX466) (the "Mutual Termination Agreement," attached hereto as **Exhibit E**).  The Franchise Agreements and Mutual Termination Agreement contain a mandatory choice of law provision requiring that "Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto."  Exs. A-D § 17(a), E § 13.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, or a substantial part of property that is the subject of the action is situated in this District.

## FACTUAL BACKGROUND

### Liberty

12.     Liberty is a franchisor of Liberty Tax Service® income tax preparation service centers located throughout the United States, including the State of Texas.

13.     Liberty owns the federally-registered Liberty Tax Service® trademarks (trademark serial numbers 75462809, 76066157, 76066158), service marks, logos and derivations thereof (the "Liberty Marks"), as well as the distinctive and well-known Liberty Tax Service® system, which sells income tax preparation and filing services and products to the public under the Liberty Marks.

14.     SiempreTax+ is a franchisor of SiempreTax® income tax preparation service centers located throughout the United States, including the State of Texas.

15.     SiempreTax+ owns the federally-registered SiempreTax® trademarks (trademark serial number 86386202), service marks, logos and derivations thereof (the "SiempreTax Marks"), as well as the distinctive and well-known SiempreTax® system, which sells income tax preparation and filing services and products to the public under the SiempreTax+ Marks.

16.     The Liberty Marks and SiempreTax+ Marks are collectively referred to as the "Marks").

17.     Plaintiffs advertise and promote the Marks throughout the United States, and have spent substantial time and money to maintain and improve their franchise systems, including, *inter alia*: (1) maintaining and developing service and product quality; (2) developing uniform designs

and markings for their services; (3) licensing trademarks and other proprietary information to, and (4) training franchisees.

18.     Plaintiffs grant licenses to franchisees to use the respective Marks and participate in their confidential and proprietary business system pursuant to written franchise agreements, which are reasonably and carefully tailored to protect Plaintiffs' respective valuable confidential information, reputation, goodwill, and other legitimate business interests.

19.     Plaintiffs disclose certain confidential information, including methods of operation of franchise, customer information, and marketing information, to franchisees through their respective Operations Manuals, training manuals, training programs, and in providing guidance and assistance to its franchisees pursuant to a franchise agreement.  Plaintiffs require that their respective franchisees agree, that upon expiration, termination, or nonrenewal of a franchise agreement, they will never use, disclose, or permit the use or disclosure of Plaintiffs' respective confidential information in any manner whatsoever.  Plaintiffs require that upon termination, expiration, or nonrenewal of a franchise agreement, the former franchisee will stop using all literature and forms received from the respective Plaintiff, deliver to the respective Plaintiff all customer information, and deliver to the respective Plaintiff all copies of its Operations Manual and any updates thereto.

20.     As a result of these efforts and expenditures, the Marks have become associated in the minds of consumers with uniform goods and services of consistently high quality, provided only by persons following Plaintiffs' respectively approved sales, operating methods and procedures.

21.     Plaintiffs have used the Marks, along with the efforts of its hardworking employees, to grow from five offices in 1998 to over 3,000 today.

22.     Liberty has grown to be one of the largest tax preparation franchises in the U.S.A.

23.     Plaintiffs play an important role in the local Virginia Beach economy, as well as nation-wide, with a network of over 12,000 tax preparers.

24.      Plaintiffs' busiest time of the year is January to April when the majority of tax returns are prepared.

**Obligations under the Franchise Agreements and Mutual Termination Agreement**

25.     On or about September 26, 2016, White entered into a franchise agreement with Liberty for Territory known as TX044 (TempleTX-1) (the "TX044 Franchise Agreement"). *See* Ex A.

26.     White operated the TX044 Franchised Business from 1400 W Adams Street, Temple, Texas 76504 (the "TX044 Franchise Location"). The term of the Franchise Agreement is five years with specific terms for renewal. *Id.* § 2(a), (b).

27.     On or about April 28, 2017 White entered into franchise agreements with Liberty and SiempreTax+ respectively for the Territory known as TX466 (TempleTX-2) (the "TX466 Franchise Agreements"). *See* Ex B, D.

28.     White operated the TX466 Franchised Business from 3122 S. 31st Street, Temple, TX 76502 (the "TX466 Franchised Location").  The term of the Franchise Agreements is five years with specific terms for renewal. *Id.* § 2(a), (b).

29.     On or about January 14, 2019, White entered into a franchise agreement with Liberty for Territory known as TX468 (KileenTX-5) (the "TX468 Franchise Agreement") *See* Ex C.

30.     White operated the TX468 Franchised Business from 1103 W Veterans Memorial Blvd, Killeen, Texas 76541 (the "TX468 Franchised Location").   The term of the Franchise Agreement is five years with specific terms for renewal. *Id.* § 2(a), (b)

31.     On March 1, 2019 White entered into a Mutual Termination Agreement for the termination of the TX466 Franchise Agreements with Liberty and SiempreTax+.  *See* <u>Ex E</u>.

32.     The TX044 Franchise Agreement and TX468 Franchise Agreement, collectively referred to as the "Franchise Agreements", remained in full force and effect following the Mutual Termination Agreement as did the Post Termination Obligations contained in Franchise Agreement TX466.  *Id.* § 6.

33.     Pursuant to the Franchise Agreements, Plaintiffs provided White with training in franchise operation, marketing, advertising, sales, and business systems.  White also received a copy of Plaintiffs' respective confidential operating, marketing, and advertising materials, which are not available to the public or to anyone who is not part of Plaintiffs' respective business systems.

34.     In exchange for Plaintiffs' grant of franchises allowing White to "operate a tax return preparation business using Liberty's system and Liberty's Marks within the Territory" and specifically at the Franchise Locations, White agreed to certain obligations while operating under the Franchise Agreements and pursuant to the Mutual Termination Agreement.

35.     Under the Franchise Agreements, White agreed to pay Plaintiffs, respectively, Royalties, <u>Exs. A, C</u> § 4(d), and an Advertising Fees, <u>Exs. A, C</u> § 4(f), which are calculated as a percentage of the franchisees' monthly Gross Receipts.  White agreed to pay Plaintiffs the royalty and advertising fees by the fifth of each month.  <u>Exs. A, C</u> § 4(g).

36.     White agreed to pay interest on amounts due under the Franchise Agreements at a rate of 12% compounded daily on any amounts that are fifteen days past due.  Exs. A, C § 4(h).

37.     Plaintiffs record as accounts receivable ("A/R") the amounts due from a franchisee under the Franchise Agreements, e.g., Royalties and Advertising Fee.

38.     Section 23 of the Franchise Agreements contains a personal guaranty whereby White agreed to abide by the terms therein including, specifically, those pertaining to governing law and forum selection, to make all payments specified in the Franchise Agreement.  *See* Exs. A, C.

39.     Pursuant to Section 6(b)(i) of the Franchise Agreements, "Liberty allows you to use Liberty's Marks to hold out your Liberty Tax Service business to the public.  You agree to exclusively use Liberty's Marks as Liberty develops them for this purpose only."  *See* Exs. A, C.

40.     Pursuant to Section 6(g) of the Franchise Agreements, "You must use the software that Liberty provides.  You may not use, install or allow to be installed any other federal or state personal income tax return preparation or electronic filing software on any computer used in the Franchised Business, without Liberty's prior written consent."  *See* Exs. A, C.

41.     Pursuant to Section 10(a) of the Franchise Agreements, White agreed to an in-term covenant not to compete, which provides that, during the term of the Franchise Agreements, White agreed "not to directly or indirectly, for a fee or charge, in the United States or Canada, prepare or electronically file income tax returns, or offer Financial Products, except in your capacity as a Liberty Tax Service franchisee using the Liberty Tax Service system to offer such products and services."  *See* Exs. A, C.

42.     The in-term non-competition covenant contained in Section 10(a) of the Franchise Agreements is necessary to protect Plaintiffs' legitimate, protectable interest in their respective franchise businesses, including but not limited to:

  A.     Maintaining and protecting Plaintiffs' goodwill and customer loyalty;

  B.     Retaining customer relationships;

  C.     Plaintiffs' customer lists, customer identification, tax returns, and other confidential information; and

  D.     Preserving Plaintiffs' ability to facilitate the operation of Liberty and SiempreTax franchises where the Franchise Location is currently located.

43.     Pursuant to Section 10(h) of the Franchise Agreements, White agreed "that the provisions of Section 10 are reasonable, valid and not contrary to the public interest." To that end, White agreed to "waive all defenses to the strict enforcement of Section 10," and further agreed that "Liberty [and SiempreTax are] entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10." *See* <u>Exs. A, C, E</u> § 6.

44.     Pursuant to Section 12 of the Franchise Agreements, White acknowledged that information provided by Plaintiffs to him regarding, among other things, Plaintiffs' respective Marks, methods, techniques, formats, specifications, procedures, information, systems, and customer and marketing information was confidential, and was to be used only in connection with the operation of the Franchised Business. *See* <u>Exs. A, C</u>.

45.     Pursuant to Sections 12(a) of the Franchise Agreements, White agreed that "During the term of this Agreement and following the expiration or termination of this Agreement, you covenant not to directly or indirectly communicate, divulge, or use any Confidential Information for your personal benefit or the benefit of any other person or legal entity except as specifically

provided by the terms of this Agreement or permitted by Liberty [or SiempreTax] in writing prior to disclosure." *See* <u>Exs. A, C, E</u> § 6

46.     Pursuant to Section 12(c) of the Franchise Agreements, White agreed that he would "(a) not use the Confidential Information for any purpose other than the operation of the Franchised Business pursuant to this Agreement; (b) maintain absolute confidentiality of the Confidential Information during and after the term of this Agreement; (c) not make unauthorized copies of any portion of the Confidential Information disclosed in written form; and (d) adopt and implement all reasonable procedures, including, but not limited to, those Liberty [or SiempreTax] prescribes from time to time, to prevent unauthorized use of or disclosure of the Confidential Information." *See* <u>Exs. A, C, E</u> § 6

47.     Pursuant to Section 17(a) of each of the Franchise Agreements, White agreed and acknowledged that Virginia law governs "all claims that in any way relate to or arise out of" the Franchise Agreements and/or the dealings between the parties to the Franchise Agreements. *See* <u>Exs. A, C, E</u> § 13.

**<u>Obligations under the Mutual Termination Agreement</u>**

48.     On or about March 1, 2019, White and Liberty, and SiempreTax+ entered into a Mutual Termination Agreement for the TX466 Franchise Agreement. *See* <u>Ex. B, D</u>. In exchange for specified buy-out terms, White agreed to "immediately comply with the Post Termination Obligations contained in the Franchise Agreements, including, but not limited to the following: a. Abide by the covenants not to compete and not to solicit as described in the Franchise Agreement…" *Id.* § 6(a).

49.     Pursuant to Section 10(b) of the TX466 Franchise Agreement, White agreed to a post-termination covenant not to compete "[f]or a period of two (2) years following the

termination, expiration, transfer or other disposition of the Franchised Business . . . you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns . . . within the Territory or within a twenty-five miles of the boundaries of the Territory." *See* <u>Exs. B, D</u>.

50. The post-termination non-competition covenant contained in Section 10 of the Franchise Agreements is necessary to protect Plaintiffs' legitimate, protectable interest in their respective franchise businesses, including but not limited to:

      E.      Maintaining and protecting Plaintiffs' goodwill and customer loyalty;

      F.      Retaining customer relationships;

      G.      Plaintiffs' customer lists, customer identification, tax returns, and other confidential information; and

      H.      Preserving Plaintiffs' ability to facilitate the operation of Liberty and SiempreTax+ franchises where the Franchise Locations are currently located.

51. Pursuant to Section 10(h) of the TX466 Franchise Agreement, White agreed "that the provisions of Section 10 are reasonable, valid and not contrary to the public interest." *See* <u>Exs. B, D</u>. To that end, White agreed to "waive all defenses to the strict enforcement of Section 10," and further agreed that "Liberty [and SiempreTax+ are] entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10." *See* <u>Exs. B-D</u>.

52. White agreed that Virginia law governs all claims arising out of or related to the Mutual Termination Agreement. <u>Ex. E</u> § 13.

**<u>Obligations under the Notes</u>**

53. White made three promissory notes (collectively, the "Notes") in favor of Liberty that are due and owing. *See* <u>Exs. F-H</u>.

54.     Each of the Notes provides that interest shall accrue at a rate of 12% per annum. *See* <u>Exs. F-H</u> p.1.

55.     Each of the Notes provides that Liberty will deduct monies that White owes Liberty to apply to upcoming amounts due to Liberty and remit the balance of fees received under Liberty's Automatic Payment Transfer program.  *See* <u>Exs. F-H</u> p.1.

56.     In each of the Notes, White agreed "to pay all attorneys' fees and other costs and expenses that Liberty may incur in connection with the collection or enforcement of [the Note]." *See* <u>Exs. F-H</u> p.1.

57.     Each of the Notes set forth events that constitute default, including "(a) any default in the payment of any installment or payment of principal, interest, or other amounts due and payable under this Note;...(c) any default by Obligor in the performance of, or compliance with, any provision in this Note or other agreement, document or instrument to which any Obligor and Liberty are parties..."  *See* <u>Exs. F-H</u> p.2.

58.     White agreed that, "If an event of default shall occur or if the undersigned shall fail to pay this Note in full at maturity, the entire unpaid balance of this Note and all accrued interest shall become immediately due and payable, at the option of Liberty, without notice or demand to any Obligor."  *See* <u>Exs. F-H</u> p.2.

59.     White agreed that, "The signatures of all individuals below in any capacity also constitute their personal joint and several agreement to perform all the obligations in and relating to this Promissory Note."  *See* <u>Ex. F-H</u> p.2.

60.     White agreed that each of the promissory notes "shall be construed in all respects and enforced according to the laws of the Commonwealth of Virginia."  *See* <u>Exs. F-H</u> p.2.

61.   On September 26, 2016, White made a promissory note in favor of Liberty in the principal amount of $97,700.00 (the "97 Note").  Ex. F.  Pursuant to the 97 Note, White was obligated to pay the principal and all remaining interest on February 28, 2021.  *Id.* p.1.

62.   Pursuant to the 97 Note, White is obligated to pay accrued interest only on February 28, 2017, accrued interest only on February 27, 2019, $24,425 plus interest on February 28, 2019, $34,195 plus interest on February 28, 2020, and 39,080 plus remaining interest on February 28, 2021.  *Id.* p.1.

63.   On April 28, 2017, White made a promissory note in favor of Liberty in the principal amount of $32,000.00 (the "32 Note").  Ex. G.  Pursuant to the 32 Note, White was obligated to pay the principal and all remaining interest on February 28, 2021.  *Id.* p.1.

64.   Pursuant to the 32 Note, White is obligated to pay $8,000.00 plus interest on February 28, 2018, $8,000.00 plus interest on February 28, 2019, $8,000.00 plus interest on February 28, 2020, and $8,000.00 plus all remaining interest on February 28, 2021.  *Id.* p. 1.

65.   Section 23 of the Franchise Agreements contains a personal guaranty whereby White agreed to abide by the terms therein including, specifically, those pertaining to governing law and forum selection, to make all payments specified in the Franchise Agreements, and to pay any promissory notes and debt owed to Plaintiffs.  *See* Exs. A, C.

66.   On January 14, 2019 White executed a promissory note in the principal amount of $33,084.84 (the "Confessed Note") wherein he confessed judgment upon default and at the time of this filing, a confessed judgment has been or will be submitted.  Ex. H.

**Unfair Competition and Breach of In-Term and Post-Termination Non-Competition Covenants**

67.   On January 22, 2020, Liberty sent three Notices to Cure Default (the "Notices") to White at his last known address by overnight courier. Ex I.  The Notices identified White was in

default of the Franchise Agreements by (1) operating a competing tax business, (a) failing to pay past due sums, and (3) failing to maintain telephone and answering services. *Id.*

68.     White has abandoned the Franchise Location 13637 at 1103 W Veterans Memorial Blvd, Killeen Texas, but he is operating a competing tax preparation business at Franchise Location 15546 which is 1400 W Adams Street, Temple, Texas.

69.     The TX044 Franchise Location at 1400 W Adams Street, Temple, Texas is currently being operated as a Liberty franchise and exhibits Liberty signage both internally and externally, although it appears as though the "Liberty" crown has been painted over on the overhead signage.

70.     White prepares and electronically files tax returns out of the Franchise Location by using non-Liberty software, which hides revenue from Liberty and diverts it from Liberty's Automatic Payment Transfer.

71.     White had not transmitted a single return through Liberty's software by January 15, 2020, but he had already started 40 returns by the same time in 2019.

**<u>Breach of the Franchise Agreement Monetary Obligations</u>**

72.     As of January 22, 2020, White had not paid Liberty the outstanding A/R in the amount of $40,052.78.

73.     As of January 22, 2020 White has deprived Liberty of the royalty and advertising fees based upon Gross Receipts and/or Minimum Royalties associated with the Franchise Agreements.

**Breach of the Notes**

74.     As of January 22, 2020, White is in default on each of the Notes because he has failed to make payments that are due and owing and/or has failed to perform as set forth in the Franchise Agreement.

75.     As of January 22, 2020, White has not paid Liberty the outstanding principal balance on the Notes in the amount of $112,957.36 and the past due amount of $15,141.40.

76.     As of January 22, 2020, White has total outstanding indebtedness of $168,151.54 including Notes, accounts receivable ("AR"), and interest.

77.     Based upon the Notices to Cure Default submitted by overnight currier to White's last known address, 212 County Road #206A, Cameron, Texas 76520, White remains in default of the Franchise Agreements and payment obligations.

78.     As of February 5, 2020, White's Franchise Agreements have been terminated for cause and his payment obligations accelerated pursuant to the terms of the Notes. Ex K.

**COUNT I**
***Breach of the TX044 and TX468 Franchise Agreement and***
***Mutual Termination Agreement against White***
***(Equitable Claim)***

79.     Plaintiffs incorporate herein by reference the preceding Paragraphs as if set forth herein verbatim.

80.     The Franchise Agreements and Mutual Termination Agreement are valid and enforceable.

81.     Plaintiffs have performed every obligation and condition required of them under the Franchise Agreements and Mutual Termination Agreement.

82.     Pursuant to Section 6(b)(i) of the TX044 and TX468 Franchise Agreements, White agreed to only use Liberty's Marks to gain business for Liberty and not to divert business to another company.  *See* <u>Exs. A, C</u>.

83.     White is using Liberty's Marks, displayed outside and inside the Franchise Location and exhibiting Liberty advertising materials, to solicit customers and lure them into the Franchise Location under the guise that Liberty is performing and filing their tax return when Defendants are preparing and filing tax returns through Natty's Tax Service.

84.     Pursuant to Section 6(g) of the TX044 and TX468 Franchise Agreements, White agreed that all computers used in the Franchised Business would only use Liberty's software for preparing and electronically filing tax returns.  *See* <u>Exs. A, C</u>.

85.     White has not transmitted a single tax return through Liberty's software for 2019. Instead, he used computers at the Franchise Location to prepare and file tax returns using non-Liberty software.

86.     Pursuant to Section 10(a) of the TX044 and TX468 Franchise Agreements, White agreed to the in-term non-competition covenant.

87.     Pursuant to the Mutual Termination Agreement, White agreed to the post-termination non-competition covenant set forth in Section 10(b) of the TX466 Liberty and SiempreTax Franchise Agreements.

88.     White is currently competing against Plaintiffs by preparing and electronically filing income tax returns through Natty's Tax Service at the TX044 Franchise Location.

89.     White agreed not to disclose or use Liberty's Confidential Information except as authorized in Section 12 of the TX044 and TX468 Franchise Agreements.

90.     White committed the following acts and omissions in violation of Section 12 of the Franchise Agreements:

      A.      Disclosing Liberty's Confidential Information, including methods of operations, customer information, and marketing information, to other persons and entities, without the consent or authorization of Liberty; and

      B.      Using Liberty's Confidential Information for purposes other than the operation of the Franchised Business, including for the purpose of operating Natty's Tax Service to compete with the TX044 Franchised Business and Liberty.

91.     White breach is a material breach of the TX044 and TX468 Franchise Agreements as well as the Mutual Termination Agreement.

92.     Each of White's breaches constitute a material breach of the TX044 and TX468 Franchise Agreements.

93.     As a direct and proximate result of these breaches, Plaintiffs have incurred, and will continue to incur substantial losses, fees, and expenses for which White is liable.

94.     As a result of White's past, present, and potential breaches, Plaintiffs have suffered and will continue to suffer actual, substantial, and irreparable damage, including, but not limited to:

      A.      Loss of customer goodwill and loyalty;

      B.      Loss of business opportunities and relationships to provide tax preparation services and related services;

      C.      Loss of customers;

      D.      Loss of profits;

      E.      Loss of franchisee stability;

      F.      Loss of ability to sell other franchises;

      G.      Loss of value in confidential business information;

H.     Loss of competitive advantage in the Temple and Killeen Texas area and the TX044 and TX468 Territories;

I.     Attorneys' fees; and

J.     Cost of this action.

95.     Plaintiffs have been and will be irreparably harmed by White's actions, and monetary damages are an insufficient remedy in that they can only potentially quantify a limited loss of customers, but cannot take into account the continuing irreparable damage to the value of Plaintiffs' confidential information, goodwill, customer loyalty, and its ability to sell franchises, all of which are caused by White's ongoing violations.

96.     Unless his wrongful conduct is enjoined, White will continue to breach his obligations by continuing to breach the non-competition covenants, continuing to use Liberty's Marks to divert business to Natty's Tax Service, continuing to use non-Liberty software on Franchised Business computers, and continuing to disclose and use Plaintiffs' confidential information.

### <u>COUNT II</u>
#### *Breach of the TX044 and TX468 Franchise Agreement against White*
#### *(Monetary Claim)*

97.     Plaintiffs incorporate herein by reference the preceding Paragraphs as if set forth herein verbatim.

98.     The Franchise Agreements is valid and enforceable.

99.     Liberty has performed every obligation and condition required of it under the Franchise Agreement.

100.     As of January 22, 2020, White has not paid Liberty the outstanding A/R in the amount of $40,052.78.

101.    As a direct and proximate result of White's breach of the Franchise Agreements, Liberty has incurred, and will continue to incur substantial losses, fees, and expenses for which White is liable.

### COUNT III
*Breach of the TX044 and TX468 Franchise Agreement § 10(a) and*
*Mutual Termination Agreement § 5 against White*
*(Monetary Claim)*

102.    Plaintiffs incorporate all previous paragraphs as though fully set forth herein verbatim.

103.    The Franchise Agreements and Mutual Termination Agreement are valid and enforceable.

104.    Plaintiffs have performed every obligation and condition required of them under the Franchise Agreements and Mutual Termination Agreement.

105.    Pursuant to Section 10(a) of the Franchise Agreements, White agreed to the in-term non-competition covenant.

106.    Pursuant to Section 5 of the Mutual Termination Agreement, White agreed to the post-termination non-competition covenant set forth in Section 10(b) of the TX466 Franchise Agreement.

107.    White is currently competing against Plaintiffs by using Liberty Marks to solicit customers into the TX044 Franchise Location and then preparing and electronically filing income tax returns through Natty's Tax Service on Franchised Business computers.  White is preparing returns within 25-miles of the boundaries of the TX 044 and TX468 Territories and within the two-year restriction of the March 1, 2019 Mutual Termination Agreement.

108.    White's breach is a material breach of the Franchise Agreements and Mutual Termination Agreement.

109.    As a direct and proximate result of White's breach of Section 10(a) of the Franchise Agreements and Section 5 of the Mutual Termination Agreement, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial, for which White is liable, including, but not limited to, compensatory damages, consequential damages, and disgorgement of White's profits.

110.    White intentionally and maliciously planned to violate the in-term and post-termination non-competition covenants.  White claimed as late as December 30, 2019 that his Liberty TX044 and TX468 Franchise Locations would be opening to process Liberty customer returns. To further deceive Liberty and the public, Defendant provided a fictitious address for his Liberty Franchise Location and provided an address to an empty storefront to Liberty personnel.

111.    Because White intentionally and maliciously violated the in-term and post-termination non-competition covenants of the Franchise Agreements, Plaintiffs are entitled to punitive damages.

## COUNT IV
### *Breach of the Notes against White*

112.    Plaintiffs incorporate all previous paragraphs as though fully set forth herein verbatim.

113.    The Notes are valid and enforceable.

114.    Pursuant to the 97 Note, White is obligated to accrued interest only on February 28, 2017, accrued interest only on February 27, 2019, $24,425 plus interest on February 28, 2019, $34,195 plus interest on February 28, 2020, and $39,080 plus remaining interest on February 28, 2021 and White is now in default of its terms because his "default…in the performance of [an]other agreement, document, or instrument to which [White] and Liberty are parties" triggers a default in the Note.  Ex. F p.1, 2.

115.     Pursuant to the 32 Note, White is obligated to pay $8,000.00 plus interest on February 28, 2018, $8,000.00 plus interest on February 28, 2019, $8,000.00 plus interest on February 28, 2020, and $8,000.00 plus all remaining interest on February 28, 2021 and White is now in default of its terms because his "default…in the performance of [an]other agreement, document, or instrument to which [White] and Liberty are parties" triggers a default in the Note. Ex. G p.1, 2.

116.     Pursuant to the Confessed Judgment Note, White is obligated to pay $33,084.84 plus accrued interest and all costs and fees, including attorneys' fees for which a judgment has been or will be entered.  Ex. H p.1, 2.

117.     Further, as a result of White's default, all principal and accrued interest is immediately due and owing based upon the acceleration clauses contained in the Notes. Ex. F-H

118.     White has failed to satisfy the amounts due and owing under the Notes.

119.     In total, White has not paid Liberty the overdue amount of $15,141.40 for the Notes and White has not paid Liberty the outstanding amount of $128,098.76 due and owing on all of the Notes he made.

120.     In the Notes, White agreed "to pay all attorneys' fees and other costs and expenses that Liberty may incur in connection with the collection or enforcement of [the Note]." Exs. F-H p.1.

121.     As maker of the Notes, White is personally liable for all amounts due and owing under the Note.

122.     Pursuant to Section 26 of the Franchise Agreement, White is personally liable for all amounts due and owing under the Notes.

123.    By virtue of White's failure to satisfy the amounts due and owing under the Notes, he has harmed Liberty in an amount equal to the full value of the Notes, including accruing interest, and the attorneys' fees and costs incurred by Liberty in connection with the collection and enforcement of the Notes.

<u>**COUNT V**</u>
*Tortious Interference with Contract against Natty's Tax Service*

124.    Plaintiffs incorporate all previous Paragraphs as though fully set forth herein verbatim.

125.    The Franchise Agreements and Mutual Termination Agreement are valid and enforceable.

126.    Natty's knew of the existence of the Franchise Agreements and Mutual Termination Agreement. Natty's is operating out of the Franchise Location (TX044) at 1400 W Adams Street, Temple, Texas 76504, which exhibits Liberty and SiempreTax Marks.

127.    Natty's engaged in the intentional and improper conduct described herein, which induced White to breach various provisions of the TX044 Franchise Agreement and Mutual Termination Agreement, including, but not limited to the following:

> A.    Preparing and electronically filing income tax returns and providing Financial Products from the TX044 Franchise Location during the term of the TX044 Franchise Agreement;
>
> B.    Preparing and electronically filing income tax returns and providing Financial Products from the TX044 Franchise Location without a Franchise Agreement and in violation of the March 1, 2019 Mutual Termination Agreement;
>
> C.    Using Liberty and SiempreTax+ Marks to solicit business;
>
> D.    Using the Franchised Business's computers to prepare and file tax returns using non-Liberty software;

     E.     Disclosing Plaintiffs' Confidential Information, including methods of operations, customer information, and marketing information, to other persons and entities, including Natty personnel, without the consent or authorization of Liberty and SiempreTax+; and

     F.     Using Liberty and SiempreTax+ Confidential Information for purposes other than the operation of the TX044 Franchised Business, including for the purpose of operating Natty's and soliciting Liberty and SiempreTax+ customers.

128.    As a result of Natty's tortious conduct, White breached the TX468 Franchise Agreement with Liberty and the Mutual Termination Agreement with Plaintiffs.

129.    Natty's tortious interference has caused Plaintiffs to suffer irreparable injury and Plaintiffs will continue to suffer irreparable injury unless Natty's is enjoined from further tortious interference with White's compliance with the terms of the TX044 Franchise Agreement and Mutual Termination Agreement.

130.    As a direct and proximate result of Natty's tortious interference, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial, including, but not limited to, compensatory damages, consequential damages, and disgorgement of Natty's profits.

131.    Natty's intentionally and maliciously caused White to violate the in-term non-competition covenant of the TX044 Franchise Agreement and post-termination non-competition covenant of the Mutual Termination Agreement.  Natty's caused or acted in concert with White to lure customers into the Franchise Location by using the Liberty Marks and then to use it as a vehicle to hide revenue from Liberty to avoid royalty payments.  To further deceive Liberty and the public, Defendants acted in concert to prepare returns with a principal address located at an address that was previously used as a Franchise Location.

132.     Because Natty's intentionally and maliciously interfered with White's compliance with the TX044 Franchise Agreement and Mutual Termination Agreement, Plaintiffs are entitled to punitive damages.

## COUNT VI
### Federal Trademark Infringement against Defendants

133.     Plaintiffs incorporate herein by reference the preceding Paragraphs as if set forth herein verbatim.

134.     Defendants are using Liberty's Marks to identify the services provided from the TX044 Franchise Location as those of a Liberty franchisee.  However, Defendants are actually providing the services through Natty's.

135.     Liberty and SiempreTax+ did not consent to Defendants' use of the Marks for the sale, offer of sale, or advertising of Natty's goods or services and Defendants' use is likely to cause confusion, cause mistake, and to deceive the public.

136.     Defendants therefore are infringing the Marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

137.     Through their unlawful use and display of the Marks, Defendants have profited and Liberty and SiempreTax+ have been damaged.

138.     Defendants' acts have been and are being done knowingly and intentionally to cause confusion, mistake, and/or to deceive.

139.     As a result, Liberty and SiempreTax+ have suffered and continue to suffer irreparable injury and have incurred and continue to incur monetary damage in an amount to be determined at trial.

## COUNT VII
### *Federal Trademark Dilution against Defendants*

140.    Plaintiffs incorporate herein by reference the preceding Paragraphs as if set forth herein verbatim.

141.    The Marks are famous trademarks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

142.    Defendants' actions and conduct, as set forth above, constitute dilution of the famous Marks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

143.    Liberty is entitled to injunctive relief under 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1).

144.    As a direct and proximate result of Defendants' wrongful conduct, Liberty has suffered and will continue to suffer irreparable damage to reputation and goodwill for which it has no adequate remedy at law.

145.    Pursuant to 15 US.C. § 1117, Liberty is entitled to recover damages from Defendants caused by their unlawful use of the Marks, in an amount to be determined at trial.

## COUNT VIII
### *Request for Preliminary Injunction against Defendants*

146.    Plaintiffs incorporate herein by reference the preceding Paragraphs as if set forth herein verbatim.

147.    Plaintiffs' application for injunctive relief is authorized by Fed. R. Civ. P. 65.

148.    Pursuant to Section 10(h) of the Franchise Agreements and Mutual Termination Agreement, White acknowledged and agreed that "Liberty [and SiempreTax+ are] entitled to a temporary restraining order, temporary and/or permanent injunction" for breach of any of the in-term and post-termination obligations of the Franchise Agreements.  *See* Exs. A-E.

149.    By providing competing tax preparation services at the TX044 Franchise Location, using the Marks in a manner that confuses, misleads, and/or deceives the public to solicit business for Natty's, and disclosing and using Plaintiffs' confidential information, Defendants are engaging and will continue to engage in tax preparation services that are in clear violation of the express terms of the Franchise Agreements and in violation of the Lanham Act.

150.    As a result of Defendants' unauthorized and unlawful acts, Plaintiffs have been irreparably harmed and will continue to suffer irreparable harm.

151.    For the foregoing reasons, Plaintiffs respectfully request that the Court grant the following injunctive relief:

      A.    Enjoin White from breaching the non-competition covenants;

      B.    Enjoin Defendants from using any of Liberty or SiempreTax+ Marks or any confusingly similar name, device, mark, service mark, trademark, trade name, slogan, or symbol to obtain revenue for Natty's or any other individual or company that is not the Franchised Business;

      C.    Enjoin Natty's from using any of Plaintiffs' confidential information;

      D.    Enjoin Defendants from diverting or attempting to divert any customer or business from Liberty or to solicit or endeavor to obtain the business of any person who shall have been a customer of the Franchise Location for a period of two years;

      E.    Enjoin Defendants from using non-Liberty software to prepare and electronically file tax returns from the Franchised Business's computers; and

      F.    Enjoin Natty's from tortiously interfering with the TX044 Franchise Agreement and Mutual Termination Agreement.

152.    Plaintiffs have a high likelihood of success on the merits on their claims, and it is probable that they will recover from Defendants, as Defendants are openly and actively violating the Lanham Act, White and Natty's are openly and actively, materially breaching the express terms of the valid and enforceable Franchise Agreements and Mutual Termination Agreement and as

Natty's is openly and actively tortiously interfering with White's performance under the TX044 Franchise Agreement and Mutual Termination Agreement and are in possession of and using Plaintiffs' confidential information.

153.    Irreparable harm will result if a preliminary injunction is not issued because Defendants will continue to violate the Lanham Act, White will continue to materially breach the express terms of the valid enforceable Franchise Agreements and Mutual Termination Agreement, and Natty's will continue to tortiously interfere with the Franchise Agreements and Mutual Termination Agreement, which will cause irreparable and irreversible harm to the goodwill and reputation that Plaintiffs have spent significant time and money establishing.

154.    Plaintiffs have no adequate remedy at law because each Defendant refuses to cease the material breaches of express terms in the Franchise Agreements and Mutual Termination Agreement and other tortious conduct.

155.    White waived any requirement that Plaintiffs post bond in Section 10(g) of the Franchise Agreements.

156.    The injury to Plaintiffs outweighs any injury that would be sustained by Defendants collectively, and each of them, as a result of the requested injunctive relief.

157.    Injunctive relief will not adversely affect the public interest.

158.    Defendants have been or are being served with notice of this application for injunctive relief.

### COUNT X
#### *Request for Permanent Injunction against Defendants*

159.    Plaintiffs incorporate herein by reference the preceding Paragraphs as if set forth herein verbatim.

160.   After a trial on the merits or a final judgment, Plaintiffs ask the Court to convert any preliminary injunction as specified above into a permanent injunction.

161.   Plaintiffs have joined all indispensable parties pursuant to Fed. R. Civ. 19.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.   For the following injunctive relief:

    A.   Enjoin White from breaching the non-competition covenants;

    B.   Enjoin Defendants from using any Liberty or SiempreTax+ Marks or any confusingly similar name, device, mark, service mark, trademark, trade name, slogan, or symbol to obtain revenue for Natty's or any other individual or company that is not the Franchised Business;

    C.   Enjoin Natty's from using any of Plaintiffs' confidential information;

    D.   Enjoin Defendants from diverting or attempting to divert any customer or business from Liberty or to solicit or endeavor to obtain the business of any person who shall have been a customer of the Franchise Location for a period of two years;

    E.   Enjoin Defendants from using non-Liberty software to prepare and electronically file tax returns from the Franchised Business's computers; and

    F.   Enjoin Natty's from tortiously interfering with the TX044 Franchise Agreement and Mutual Termination Agreement.

2.   For a monetary award against Defendants in excess of $390,000 to be proven at trial, including, but not limited to, compensatory damages, expectancy damages, punitive damages, and disgorgement of profits;

3.   For a monetary award against White and Natty's for Plaintiffs' attorneys' fees and costs, in an amount to be proven at trial;

4.   For pre- and post-judgment interest; and

5.   For such other relief as the Court deems just and appropriate.

Respectfully submitted this 21st day of February, 2020.

GORDON REES SCULLY MANSUKHANI, LLP

By:  /s/ Kirstie Simmerman
Kirstie Simmerman, *Lead Counsel*
Texas Bar No. 24083858
ksimmerman@grsm.com
Nathan D. Pearman
Texas Bar No. 24074872
npearman@grsm.com

2200 Ross Avenue, Suite 4100 West
Dallas, Texas 75201
214-231-4660
214-461-4053 (Facsimile)

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
JTH TAX LLC d/b/a LIBERTY TAX SERVICE,  :
*et al.*,                                :
                                         :
                    Plaintiffs,          :
        v.                               :   Case No:
                                         :
MICKEY WHITE, et al.,                    :   **VERIFIED COMPLAINT**
                                         :
                    Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

COMMONWEALTH OF VIRGINIA           )

CITY OF VIRGINIA BEACH             )

   Gary Chelliah, being duly sworn, deposes and says:

   I am Regional Director for JTH Tax LLC d/b/a Liberty Tax Service ("Liberty").  I have read the foregoing Verified Complaint and know the contents thereof and state the allegations are true.  I base this verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.  The grounds of my knowledge, information, and belief are derived from my position as Regional Director at Liberty, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Plaintiffs' records and conversations with Plaintiffs' employees.

DocuSigned by:

*[signature]*

118670C0D358409...

_____

Gary Chelliah