**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **JTH TAX LLC d/b/a LIBERTY TAX** | § | |
| **SERVICE, and SIEMPRETAX+, LLC** | § | |
| *Plaintiffs,* | § | **CIVIL NO. 6-20-CV-00140-ADA** |
| | § | |
| **v.** | § | |
| | § | |
| **MICKEY WHITE d/b/a NATTY'S TAX** | § | |
| **SERVICE,** | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

**ORDER GRANTING PLAINTIFF'S APPLICATION FOR PRELIMINARY
INJUNCTION AGAINST DEFENDANT**

Before the Court is Plaintiffs JTH Tax, LLC, doing business as Liberty Tax Service, and SiempreTax+, LLC's Motion for Entry of Temporary Restraining Order and Preliminary Injunction. After reviewing the parties' filings, memoranda, and applicable case, law, the Court finds that the preliminary injunction should be **GRANTED IN PART** and **DENIED IN PART** for the following reasons.

## I.      BACKGROUND

This case involves an alleged breach of contract and trademark infringement and dilution by a franchisee, Mickey White (doing business as Natty's Tax Service, and therefore referred to hereinafter as "Defendant"). Am. Compl., ECF No. 26. Plaintiffs JTH Tax, LLC, doing business as Liberty Tax Service ("Liberty"), and SiempreTax+, LLC ("SiempreTax+") (collectively, "Plaintiffs") are corporations and franchisors owning income tax preparation offices throughout the United States, including the state of Texas. ECF No. 26, at ¶¶ 4–5. Defendant entered into franchise agreements for the operation of three separate Liberty franchise locations, and one contemporaneous franchise agreement with SiempreTax+ which was located at the same establishment as one of the Liberty franchise locations. ECF No. 26, ¶ 9. After some time

1

operating as a franchisee, Defendant entered into a Mutual Termination Agreement with Plaintiffs for the termination of his franchise license for the location which housed both Liberty and SiempreTax+ franchises. ECF No. 26, Ex. E.

The Mutual Termination Agreement seeks to absolve all parties of their remaining obligations under the respective franchise agreement other than the covenants listed in the Post-Termination Obligations of the original franchise agreement, which are repeated in the Mutual Termination Agreement. *See* ECF No. 26, Exs. A, B, C, D, E. These obligations include, in relevant part, to "forever cease the use of any of the [franchise trademark] Marks or any other marks that may be confused with the Marks," to stop using "all literature and forms received from Liberty and other items bearing the Marks," to transfer to Liberty all telephone numbers used in relation to the franchised business, to "[d]eliver to Liberty any original and all copies . . . of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers of the Franchised Business," to "[d]eliver to Liberty any original and all copies . . . containing customer tax returns, files, and records," as well as all copies of the corporate manual. ECF No. 26, Exs. A, B, C at § 9. Additionally, the agreements include a Post-Term Covenant Not to Compete, to which a franchisee agrees to not "directly or indirectly, for a fee or charge, prepare or electronically file income tax returns, or offer Financial Products, within the Territory or within twenty-five (25) miles of the boundaries of the Territory . . . ." ECF No. 26, Exs. A, B, C at § 10(b). These obligations are reflected and reiterated in the Mutual Termination Agreement entered into by Plaintiffs and Defendant. ECF No. 26, Ex. E.

Following the Mutual Termination Agreement executed between Plaintiffs and Defendant on March 1, 2019, Defendant began operating a separate income tax business known as Natty's Tax Service out of the location which formerly housed the Liberty and SiempreTax+

franchises. ECF No. 26 at ¶ 67. Plaintiffs subsequently terminated Defendant's remaining franchise agreements based on the operation of a competing business and failure to pay past due sums per their franchise agreements. ECF No. 26 at ¶ 66, 77; ECF No. 1, Ex. K. Plaintiffs now seek an order of preliminary injunction to either enjoin or order Defendant to comply with many of the Post Termination Obligations originally agreed to by the parties in their original contracts. Pl.'s Mot., ECF No. 22 at 21. Defendant contends that compliance with an injunction ordering this relief in many instances would be too costly, burdensome, and would not provide any relief to Plaintiffs. *See* Def.'s Resp. to Pl.'s Mot., ECF No. 28 at 5.

## II.     LEGAL STANDARD

A grant of injunctive relief is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance. *Opulent Life Church v. City of Holly Springs, Miss.,* 697 F.3d 279, 288 (5th Cir. 2012); *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). Further, the injunctive process is designed to deter, or afford preventative relief, not to punish. *See Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 61 (1975). A preliminary injunction should not be granted unless a movant demonstrates by a clear showing the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest. *Lindsay v. City of San Antonio*, 821 F.2d 1103, 1107 (5th Cir. 1987); *Valley*, 118 F.3d at 1051. At the preliminary injunction stage, the procedures for the district court are less formal, and the court may rely on otherwise inadmissible evidence. *Sierra Club, Lone Star Chapter v. F.D.I.C.*, 992 F.2d 545, 551 (5th Cir. 1993).

### III.    ANALYSIS

Because Plaintiffs must establish a clear showing of each of the four elements to qualify for a preliminary injunction, the Court will analyze each element separately.

#### A.  Substantial Likelihood of Success on the Merits

To determine the likelihood of success on the merits, the Fifth Circuit instructs us to look to the standards provided by the substantive law. *Valley*, 118 F.3d at 1051. Plaintiffs argue that both their breach of contract claims, and their trademark infringement and dilution claims warrant an order of preliminary injunction. ECF No. 22 at 8, 11. Thus, the Court must analyze the likelihood of success for each claim.

#### 1.  Breach of the Franchise Agreements and Mutual Termination Agreements

Under Virginia law[1] the elements of a breach of contract action are: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of that obligation. *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610 (2004). Defendant's only dispute of legal enforceability of the agreements he entered into appears to be that "a franchise agreement is null and void if a franchisor brings undue burden on a franchisee, by their actions or by requiring things not in a franchise agreement." Def.'s Resp. at 5. This argument has no legal bearing on the validity of the contract at the time it was entered into. Defendant further alleges that Liberty required certain unsavory financial obligations of him as a franchisee and that Liberty engaged in practices such as double-charging loan fees, taking "kickbacks" on tax returns, and misrepresenting electronic filing fees. *See generally* ECF No. 23. Because Defendant does not

---

[1] Each of the franchise agreements entered into by the parties contain a choice of law clause which requires that "Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the parties hereto . . . ." ECF No. 22, Ex. A at § 17(a). This language indicates that even though the Mutual Termination Agreement may not have a choice of law clause, any adjudication based upon that agreement alone would still be governed by Virginia law.

4

proffer any plausible arguments challenging the validity of the contracts in question, Plaintiffs have made a clear showing that the parties are bound by the contracts in question.

Plaintiffs have further made a clear showing that Defendant has violated certain post-termination obligations in the Franchise Agreements and Mutual Termination Agreement. It has been conceded and undisputed that Defendant has retained customer lists and many copies of client files, along with Liberty's Operation Manual. ECF No. 28, pp. 1–2. Defendant has also conceded that he is operating a separate tax preparation business for pay. ECF No. 23 at 5. These concessions are enough to show that Defendant has violated certain post-termination obligations required by the contracts he entered into. *See* ECF No. 22, Ex. A, §§ 9(g–i), 10(b).

Finally, Plaintiffs have also made a clear showing that they have suffered injury from Defendant's breach of his contractual obligations. Notably among these is Plaintiffs' evidence that they entered into the Mutual Termination Agreement agreeing to forgive a debt of $24,000 owed by Defendant. ECF No. 22-6, Ex. E, Mut. Term. Agr. and Operations Request at 5. This was in exchange for the execution of the Mutual Termination Agreement which, *inter alia*, required Defendant to abide by the covenant of non-competition as described in the Franchise Agreements. *Id.* at 2. Therefore, because Plaintiffs have provided clear evidence for each element of its breach of contract claim, Plaintiffs have demonstrated a substantial likelihood of success on the merits.

### 2.  Trademark Infringement & Dilution

Plaintiffs also seek preliminary injunction against Defendant for the use of certain marks and advertising materials registered to or legally protectable by Plaintiffs; specifically, they seek injunction against the use of "a Liberty sign, confusingly similar images of the statue of Liberty, and slogans and marketing materials that mimic Plaintiffs' materials." *See* ECF No. 22 at 12, Ex.

S, Photos of Business. The photos provided by Plaintiffs show that Defendant has used a sign bearing a logo featuring the face of the Statue of Liberty with the words "Income Tax" in bold, uppercase letters, although the logo of the face has been painted white so as to partially blend in with the background of the sign. *See id.* at Ex. S, Photos of Business. The interior of the store also bears a large mural emblazoned with depictions of the United States flag and images of the Statue of Liberty. *See id.* Further, the storefront windows have posters featuring the type "get 50 Ca$h NOW" with a graphic of $50 bills, "GET CASH NOW," and others with marketing materials which have been provided through Defendant's former franchising with Plaintiffs. *See id.*

To recover on a claim of trademark infringement, a plaintiff must show "that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion." *Am. Rice, Inc. v. Producers Rice Mill, Inc.* 518 F.3d 321, 329 (5th Cir. 2008). Registration of a mark with the Patent and Trademark Office constitutes prima facie evidence of ownership and the registrant's exclusive right to use the registered mark in commerce with respect to the specified goods or services. 15 U.S.C. §§ 1057(b), 1115(a); *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998). Here, it has been shown that Plaintiffs own federally registered service marks consisting of: (1) a logo depicting the partial face of the Statue of Liberty with the words "Liberty Tax Service" in all caps placed beside it, ECF No. 22, Ex. N; (2) a three-dimensional sculpture in the shape of the Statute of Liberty on a pedestal, *Id.*, Ex. P; and (3) the phrase "Cash in a Flash" consisting of standard characters without claim to any particular font, style, size or color. *Id.*, Ex. L. Thus, the legal protectability element for materials bearing these marks has been sufficiently shown.

In determining the likelihood of confusion, the district court must apply the "digits of confusion" test which weighs the following factors: (1) the type of mark allegedly infringed; (2) the similarity between the two marks; (3) the similarity of the products or services; (4) the identity of the retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; and (7) any evidence of actual confusion. *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 543 (5th Cir. 1998), *abrogated on other grounds*; *YETI Coolers, LLC v. JDS Indus., Inc.*, 300 F. Supp. 3d 899, 912 (W.D. Tex. 2018). "Likelihood of confusion is synonymous with a probability of confusion, which is more than a mere possibility of confusion." *Pebble Beach*, 155 F.3d at 543 (citing *Elvis Presley Enters.*, 141 F.3d at 193).

Regarding Defendant's storefront sign which bears the Liberty logo painted over in white, these factors favor a finding of a likelihood of confusion. First, the mark is a logo graphic which is registered to appear next to the name of the company, Liberty Tax Service. ECF No. 22, Ex. N. Second, the similarity between the two marks is undeniable. Defendant, although painting over the graphic design, has not obfuscated the appearance of the Liberty's logo; next to it are the words "Income Tax," in bold, red, uppercase type, over a white background, and featuring a blue border. *See id.* By utilizing an identical logo, similar font, and the use of red, white, and blue colors, it is apparent that the two marks are quite similar. Third, the products and services offered by Defendant's tax business and Plaintiffs' tax business are identical. Both provide tax return services to clients. Fourth, the identity of the advertising media used is substantially similar. Plaintiffs allege that their storefront advertising materials are the exact materials provided to Defendant when he was a franchisee of Plaintiffs, and Defendant has not disputed this assertion. ECF No. 22 at 12. While Plaintiffs have not attempted to show evidence of the

remaining three factors of consideration, the Court finds that the evidence offered is sufficient to show that there is a likelihood of confusion by Defendant's use of the sign currently in place.

Plaintiffs also seek to enjoin Defendant from using "confusingly similar images of the statue of Liberty." *Id.* Defendant has in his office a large mural depicting images of the Statue of Liberty and the United States flag. *See id.*, Ex. S. Plaintiffs have registered to them a service mark depicting "the nonfunctional elements of a three-dimensional sculpture in the shape of the Statue of Liberty on a pedestal" for use in "income tax preparation." ECF No. 22-17, Ex. P. Based upon an analysis of the factors aforementioned, the Court finds that there is a showing of likelihood of confusion regarding Defendant's wall art depicting the Statue of Liberty for use in his income tax preparation business.

### B.  Substantial Threat of Irreparable Harm

A plaintiff must also be threatened with irreparable injury for a court to issue a preliminary injunction. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 392 (1981). Economic losses alone do not justify a preliminary junction: "[t]here can be no irreparable injury where money damages would adequately compensate a plaintiff." *DFW Metro Line Servs. v. Sw. Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir. 1990) (citing *Spiegel v. City of Houston*, 636 F.2d 997, 1001 (5th Cir. 1981); *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975). "This is a heavy burden to overcome, and mere speculative injury will not suffice." *Brink's Inc. v. Patrick*, 3:14-CV-775-B, 2014 WL 2931824, at *6 (N.D. Tex. June 27, 2014).

Plaintiffs argue that they will suffer irreparable injury in the form of lost customers and good will if a preliminary injunction is not ordered. ECF No. 22 at 14. To provide evidence in support of this argument, Plaintiffs have only provided the declaration a recently employed regional director which contains the bare allegations that "[a]s a result of [Defendant's] wrongful

acts and omissions. Plaintiffs have suffered the loss of customer goodwill and . . . loyalty." *See* ECF No. 22-1, Decl. of Chelliah, ¶ 51. Without more, this assertion is mere speculation, "and mere speculative injury will not suffice." *See Brinks Inc.*, 2014 WL 2931824, at *6.

It is important to note, however, that *Brinks*—along with many other federal cases in Texas—have held that harm arising out of a breach of non-compete covenants is the "epitome of irreparable injury, so enforcement appears to be the rule rather than the exception" *See, e.g., McKissock, LLC v. Martin*, 267 F. Supp. 3d 841, 858 (W.D. Tex. 2016); *Sirius Computer. Solutions, Inc. v. Sparks*, 138 F. Supp. 3d 821, 841 (W.D. Tex. 2015). However, these cases are distinguishable from the present one in certain respects. First, the presumption of irreparable harm afforded these cases come from the application of Texas law to the relevant non-competition agreements. *See McKissock, LLC*, 267 F. Supp. 3d at 852 (applying the Texas Business and Commercial Code to a non-competition provision); *Sirius Computer Solutions, Inc.*, 138 F. Supp. 3d at 836–37. Here, the relevant contracts contain choice-of-law provisions for Virginia. ECF No. 22-2, Ex. A, Franchise Agreement at § 17. Virginia's Code, unlike Texas's, does not provide the statutory basis for injunctive relief to enforce a noncompetition agreement, and therefore does not provide the basis for the presumption of irreparable harm on the showing of a violation of a non-compete which the beforementioned cases rely on. *Compare* Tex. Bus. & Com. Code Ann. § 15.51(a) (Procedures and Remedies in Actions to Enforce Covenants Not to Compete), *with* Va. Code Ann. § 59.1 (West 2018) (containing no similar statutory provision for enforcement of covenants not to compete).

Further, "[w]hile courts are willing to entertain a loss of customers or goodwill as a harm, the movant must come forward with evidence that such an injury is irreparable by showing that the loss cannot be measured in money damages." *Digital Generation, Inc., v. Boring*, 869 F.

Supp. 2d 761, 778 (N.D. Tex. 2012) (citing *Millennium Rests. Grp., Inc. v. City of Dallas*, 181 F. Supp. 2d 659, 666 (N.D. Tex. 2001). In *Digital Generation*, the plaintiff "failed to adduce any evidence, in the form of affidavits or otherwise, demonstrating why the loss of its customers and goodwill would result in irreparable harm" because they failed to show evidence that the loss could not be measured in money damages. 869 F. Supp. 2d at 777–78. The district court reasoned that the plaintiff had presented no evidence to support its argument that damages would be difficult to calculate or that monetary damages would be inadequate, and therefore the plaintiff had not satisfied the element of a clear showing of irreparable harm. *See id.* at 778.

Here, while Plaintiffs have presented a lone declaration of a regional manager in support of its argument that Plaintiffs will suffer immeasurable harm, constituting *some* evidence, the declaration merely echoes the same speculative assertions found in Plaintiffs' argument: they contend that the misuse of Liberty's "highly confidential, sensitive, and lucrative data and information" results in irreversible harm and damages Liberty's "franchise system and reputation." *See* ECF No. 22 at 15; ECF No. 22-1 at ¶ 51. Defendant rebuts that he is not using or misusing any of Liberty's data and information and that he has been denied access to any such customer data and information since January 20, 2020. Def's. Reply, ECF No. 23 at 3–4. Defendant further avers that any hard copies of files held by him are signed consent forms and summary sheets along with boxes of files left from numerous offices which were left by Liberty prior to Defendant's franchising with Plaintiffs. *Id.*; Def's. Resp., ECF No. 28 at 2. Defendant does still possess Plaintiffs' operation manuals; though this Court has already ordered Defendant to return these manuals, the Court will memorialize such in this Order. *See* Minute Entry, ECF No. 25. Thus, the Court finds that to the extent Plaintiffs endeavor to use Defendant's alleged access to Liberty's "lucrative" data and information as evidence of irreparable harm, this

argument is either mooted by their own lockout of Defendant from their online systems or by this Court's Order. To the extent Plaintiffs argue that they have or will lost customers as a result of Defendant's operation of a separate tax preparation service, the Court finds that Plaintiffs have failed to clearly show how such injury cannot be measured in monetary damages.

For the foregoing reasons, the Court finds that Plaintiffs have failed to meet the burden of showing clearly that any damages incurred as a result of Defendant's actions regarding violating the noncompetition agreement are irreparable.

Plaintiffs further argue that Defendant currently possesses confidential and sensitive data and information in the form of client files from Liberty clients. ECF No. 22 at 14. Defendant admits that some client documents are in his possession. ECF No. 23 at 4. Some of these documents may be from years before Defendant entered into his contracts with Plaintiffs. *See* ECF No. 28 at 2. The Court finds that there exists a substantial threat of irreparable harm if Defendant is permitted continued access and possession of such confidential information that does not or no longer belongs to him. Further, Defendant already agreed to turn over these files in an oral hearing on May 13, 2020. *Id.* at 1. This agreement will be memorialized in this Order.

Plaintiffs also argue that they will suffer irreparable harm because Defendant is continuing to "hold out" as a Liberty franchisee in an attempt to confuse and deceive customers through the use of Liberty's registered service marks or trade dress, and thus seek to enjoin Defendant from the use of such marks. ECF No. 22 at 15. Defendant contends that the storefront sign at issue was covered completely by a new sign not bearing any Liberty marks by February 1, 2020. ECF No. 23 at 1. Defendant further contends that all employees were not to present themselves or the office as Liberty Tax Services and that all signs and cards have no mention of Liberty Tax on them. *Id.* at 1–2. Plaintiffs have not presented any evidence contradicting these

statements. Absent a showing that Defendant is or will infringe on Plaintiffs' service marks or trade dress, the Court finds these issues moot. However, in the previous oral hearing, the parties have agreed that Defendant will not use any of Plaintiffs' Marks for use in his store, and this agreement will be memorialized in this Order.

### C.  Balancing the Hardships

The third factor requires the plaintiff to establish that his irreparable harm is greater than the hardship that the preliminary injunction would cause the defendant. *Valley*, 118 F.3d at 1051. Plaintiffs argue that preliminary injunction is necessary to "protect Plaintiffs' legitimate, protectable interest in their franchise businesses" and to encourage other franchisees to "play by the rules." ECF No. 22 at 17. Plaintiffs further argue that a preliminary injunction preventing Defendant from operating his tax preparation business would not be a significant burden. *Id.* at 18. Defendant contends Plaintiffs' conduct as a franchisor has driven him to "the brink of bankruptcy" and that a preliminary injunction would "force me to not make a living for me and my daughter. They are aware that I am disabled and can't use my left arm from my stroke and can not [sic] obtain any other type of employment." ECF No. 23 at 5. Defendant states he suffered this disabling stroke while in the office as a Liberty franchisee during peak tax season after losing customers after Liberty's systems failed and that he was told by his doctor was brought on by the resulting stress. *Id.*

This Court dealt with a similar, albeit distinctive, balancing test in *McKissock, LLC*. 267 F. Supp. 3d at 859–60. There, the defendant argued that a preliminary injunction would cause her to have to file for unemployment if she could not earn an income in the career she had worked in for twenty years. *Id.* The court was unconvinced, however, with this argument: they found that the defendant had previously been a fully trained and experienced real estate appraiser of

seventeen years prior to her employment under the plaintiff as a continuing education instructor for the insurance appraisal industry. *Id.* They further found that the defendant testified that she could even become an insurance appraiser herself. *Id.* at 860.

Here, however, Defendant has alleged a more debilitating hardship. There is no evidence in the record of a prior employment field which Defendant could return to, and a disability as severe as a loss of use of an arm may render such a possibility impossible, along with many other occupations. The three non-competes, as written, would render Defendant unable to "directly or indirectly, for a fee or charge, prepare or electronically file income tax returns, or offer Financial Products, within the Territory or twenty-five (25) miles of the boundaries." ECF No. 22-2, Ex. A, § 10(b). The territories themselves cover substantial portions of the cities of Temple and Killeen, Texas. *See* ECF Nos. 22-2, 22-3, 22-4, Exs. A–C, Territory Map at 30. Thus, a preliminary enforcement of these provisions would cast a wide net over the areas where Defendant could possibly work as an income-tax preparer. Considering Defendant's medical disability along with his financial situation, an injunction at this stage could very likely be debilitating to this Defendant where it would not be to another. While the potential loss of customers and goodwill is significant for Plaintiffs' side of the balancing, the realistic result of a preliminary injunction enforcing the non-compete indicates that the potential injury suffered by the Defendant is greater than that shown by Plaintiffs. Therefore, regarding the enforcement of the non-compete, Plaintiffs have not met their burden to establish the third element of the preliminary injunction analysis.

To the extent that Plaintiffs seek delivery of all files and documents at the expense of Defendant, the Court finds that these documents were agreed to be turned over in the prior oral hearing. ECF No. 25. Defendant contends that he agreed to "turn over" these files but not to pay

13

for their delivery, and he further argues that such a requirement would impose a heavy financial burden upon him. *See* ECF No. 28 at 1. The Court finds that whatever financial burden this may place on Defendant, the potential abuse or misuse of any such confidential customer information would be the greater of these harms.

Plaintiffs have failed to satisfy a clear showing of a substantial threat of irreparable harm. *See supra* at 11. However, the Court notes that, had Plaintiffs prevailed on this inquiry, the irreparable harms claimed—loss of customers and good will—would be greater than Defendant's potential hardship.

### D.  The Public Interest

The Court further finds that a grant of preliminary injunction would not disserve the public interest. It is in the public interest to uphold contracts and enforce valid non-compete agreements. *See, e.g., Sirius Computer Solutions, Inc.*, 138 F. Supp. 3d at 843; *Brink's Inc.*, 2014 WL 2931824, at *9.

### IV.    CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiffs' Motion for Temporary Restraining Order and Request for Preliminary Injunction (ECF No. 27) is **DENIED IN PART** with respect to the enforcement of the non-compete agreement and **GRANTED IN PART** as follows:

1. Defendant Mickey White is ordered to return to Liberty, at his own expense, the Liberty Operational Manual.

2. Defendant Mickey White is ordered to deliver to Liberty, at his own expense, any and all copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, phone numbers, of customers who

patronized Plaintiffs' businesses, and any original and all copies containing customer tax returns, files and records, to the extent that Defendant Mickey White possesses such documents and files.

3. Defendant Mickey White is ordered to not use any of the Liberty Marks for any purpose at Natty's Tax Service or any other tax preparation business which he may open.

It is further **ORDERED** that the current terms of the Preliminary Injunction shall be in effect until the disposition of this case.

**SIGNED** this 8th day of July, 2020.


ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE